Adam M. Apton
LEVI & KORSINSKY, LLP
55 Broadway, 4th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
aapton@zlk.com

*Attorneys for Plaintiff John Kelk*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN KELK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BAUSCH HEALTH COMPANIES INC., JOSEPH PAPA, PAUL HERENDEEN, and THOMAS APPIO,<br><br>Defendants. | Case No. 3:23-cv-3996<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Kelk, ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, allege the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's

1

attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Bausch Health Companies, Inc. ("Bausch"), analysts' reports and advisories about Bausch, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Bausch securities between August 6, 2020 and May 3, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Bausch and certain of its top officials.

2.      Bausch, the successor entity of Valeant Pharmaceuticals International, Inc., is a pharmaceutical company known for its majority ownership of Bausch + Lomb Corporation ("B+L"). B+L operates a successful eye health business consisting of Bausch + Lomb Vision Care, Surgical and Ophthalmic Pharmaceuticals products.

3.      In 2016, Bausch was forced to replace its senior management and

attempt to rebuild its reputation after it was revealed that it had engaged in one of the most egregious cases of securities fraud in U.S. history. Among other things, Bausch was forced to restate its financial statements, enter into a settlement with the SEC, and settle a class action with investors for a payment of more than $1.1 billion in November 2019.

4.     Despite the $1.1 billion settlement payment, Bausch still faced liability arising from its underlying alleged violations of the securities laws. Multiple hedge funds and institutional investors had "opted out" of the class action settlement in favor of pursuing individual claims (the "Opt-Out Plaintiffs"). The Opt-Out Plaintiffs claim damages of approximately $4.2 billion.

5.     On August 6, 2020, Bausch announced plans to spin-off B+L into its own publicly tradeable entity. Defendants at the time said that the benefits of the spinoff included "improved strategic focus and enhanced financial transparency." Joseph Papa, Bausch's former CEO, described the spinoff as "unlock[ing] what we see as unrecognized value in Bausch Health shares."

6.     Defendants made similar statements about the spin-off throughout the Class Period. These statements were false and/or materially misleading. In truth, the spin-off was executed as part of a strategy to subvert the Opt-Out Lawsuit and leave the plaintiffs in those suits without any viable means to a potential recovery. Without B+L, Bausch was worth considerably less and, according to some analysts,

potentially insolvent. Defendants' actions with respect to B+L left Bausch shareholders with shares worth considerably less due in part to the fact that the company no longer possesses one of its most valuable business segments, *i.e.*, B+L.

7.     As a result of Defendants' wrongful acts and omissions, and the steady decline in the market value of Bausch's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Bausch maintains offices in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

4

## **PARTIES**

12.     Plaintiff John Kelk, as set forth in his previously filed Certification, acquired Bausch securities at artificially inflated prices during the Class Period and was damaged as a result.

13.     Defendant Bausch is a corporation with U.S. headquarters located at 400 Somerset Corporate Boulevard, Bridgewater, New Jersey.  Bausch's common stock trades on the New York Stock Exchange ("NYSE") under the trading symbol "BHC". At all relevant times, Bausch's common stock traded in an efficient market.

14.     Defendant Joseph Papa ("Papa") is Bausch's former Chairman and Chief Executive Officer.

15.     Defendant Paul Herendeen ("Herendeen") is Bausch's former Chief Financial Officer and Executive Vice President.

16.     Defendant Thomas Appio ("Appio") is Bausch's current Chief Executive Officer.

17.     Defendants Papa, Herendeen, and Appio are sometimes referred to herein as the "Individual Defendants."

18.     Bausch and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     In 2016, Bausch was forced to replace its senior management and attempt to rebuild its reputation after it was revealed that it had engaged in one of the most egregious cases of securities fraud in U.S. history. Among other things, Bausch was forced to restate its financial statements, enter into a settlement with the SEC, and settle a class action with investors for a payment of more than $1.1 billion.

20.     The underlying securities fraud lawsuit alleged that Bausch's chief executives had misrepresented the company's business plan by concealing *inter alia* that the business was dependent upon falsified revenue and was engaging in highly questionable self-dealing distribution practices. The lawsuit was styled *In re Valeant Pharmaceuticals International, Inc. Securities Litigation*, No. 15-cv-07658 (D.N.J.) (the "Class Action Lawsuit").

21.     On December 15, 2019, the parties to the Class Action Lawsuit agreed to a settlement, resolving all claims except those alleged by the Opt-Out Plaintiffs which included a number of institutional and professional investors. These plaintiffs proceeded with their claims after the settlement. Upon information and belief, the potential damages at issue from the Opt-Out Plaintiffs equals approximately $4.2 billion.

22.     On August 6, 2020, Bausch announced a plan to spinoff B+L as a

6

separate company in order to reduce Bausch's debt. When the spinoff was announced, Bausch knew they faced substantial risk from the Opt-Out Plaintiffs. Bausch also knew that spinning-off B+L would leave Bausch with significant debt and the loss of the cashflow B+L had historically generated.

23.     On May 5, 2022, B+L effected the spinoff and began trading as an independent company under the ticker "BLCO" on the NYSE.

24.     Throughout the Class Period, Defendants repeatedly described the B+L spinoff as an attempt to reduce Bausch's debt and said the spinoff was in the best interest of Bausch shareholders. The spinoff was actually an attempt to shield valuable assets from the Opt-Out Plaintiffs that ultimately operated to the detriment of ordinary Bausch shareholders.

## MATERIALLY FALSE AND MISLEADING STATEMENTS

### August 6, 2020

25.     On August 6, 2020, Bausch announced plans to spinoff B+L. During a quarterly earnings call, former Chief Executive Officer and Chairman of the Board Joseph Papa said the reason for the spinoff was to pay down Bausch's debt: "What we felt we had to do is is we had to get ourselves into a position where we can divest the noncore assets of about $4 billion, pay down a lot of debt, about $8 billion plus of pay down, manage the portfolio we had."

26.      During that earnings call, Executive Vice President and Chief Financial

Officer Paul Herendeen said the spinoff would maximize shareholder value and pay down Bausch's debt:

> I think the way we approach this is that to preserve the maximum value for BHC's shareholders through the separation process, it requires that we consider balance, solve for a number of variables, including those based on our current leverage. And to be clear, our goal is that both B + L and BHC will emerge from the spin process with appropriate capital structures, will allow each of them the financial strength and flexibility to drive future value. And an important consideration in executing that is time. With the passage of time helps as we continue to generate cash and delever.

### November 3, 2020

27. On November 3, 2020, after market hours, during a quarterly earnings call, CEO Papa again said the spinoff would reduce Bausch's debt: "we realize we have to reduce leverage. And if there's ways to reduce leverage, we're going to actively pursue them across our business because we need to do this to unlock the value of B&L as we split up 2, we think, very highly attractive companies with both of our – the B&L spend plus the remaining BHC business. We think it will be very exciting for all of our shareholders."

### February 24, 2021

28. On February 24, 2021, Papa described how fast Bausch was moving in toward a B+L spinoff. During an earnings call, Papa said:

> we are trying to balance that question of speed and getting good value, but we believe the most important thing to do is to spin out the B&L business as soon as possible. So I think the way I'll say it, I don't want to negotiate on the conference call, but we are seeking to move with speed.

We will seek to do that, but we certainly want to make sure we get good value for our shareholders. I don't want to say maximize full value. I want to say get good value for our shareholders. The important point is that we are moving to expedite all those activities.

## **August 3, 2021**

29.   On August 3, 2021, during a quarterly earnings call, Papa again talked about the B+L spinoff in terms of reducing Bausch's debt.  Papa said:

We are actively pursuing all opportunities to expedite leverage improvement and deliver shareholder value, including using cash from divestitures to help delever, accessing equity capital markets through the IPOs with optionality, organic deleveraging and improving working capital efficiency.

To summarize, the steps we are taking will enable us to pay down debt by accessing the equity capital markets with B&L and the Solta IPOs by unlocking the value of these attractive assets that have been undervalued as part of an aggregated company.

## **February 23, 2022**

30.   During an earnings call on February 23, 2022, Defendants again described the speed Bausch was moving toward the spinoff and described the plan to distribute B+L shares to Bausch shareholders after the spinoff.  Papa said, "After the IPOs are complete, we plan to distribute the remaining Bausch & Lomb shares to existing Bausch Health shareholders following the expiry of customary lockup achievement of target net leverage ratios and subject to regulatory approvals."

31.   Papa described how quickly Bausch was moving to accomplish the B+L spinoff: "we clearly want to make sure we move expeditiously but we're looking to

9

maximize the shareholder value creation opportunity in each of those businesses. So we're not going to be reckless in the timing. We want to move expeditiously, but not be reckless in that timing."

## May 10, 2022

32.    The B+L spinoff was scheduled to close on May 10, 2022.  On that day, during an earnings call, Papa explained the spinoff would generate less cash than planned and minimized the risk from the Valeant opt out plaintiffs.

33.    Papa said the IPO was smaller than planned because of "market conditions."  He said: "Given current market conditions, we decided to proceed with a smaller IPO offering than we originally intended. At IPO closing, Bausch Health will own a 90% majority stake in Bausch + Lomb. Bausch Health will have the flexibility to monetize approximately an additional 10% of Bausch + Lomb shares to decrease debt and for the benefit of Bausch Healthcare shareholders."

34.    During the earnings call, Papa also minimized the risk Bausch faced from the Opt-Out Plaintiffs.  Papa said:

> We disagree with reports in the media regarding the characterization as potential risk and dispute the claims and the remaining individual opt-out complaints. We believe we have viable defenses in each of these actions, and we'll continue to vigorously defend ourselves…
>
> I do think that there are some questions that people have raised specifically in terms of some of the comments that I made in terms of how we're looking at and some of the opt-out claims that occurred by opt-outs. They made suggestions that potential claims against are more than the class action lawsuit. We do not see it that way at all. We have

10

taken reserves for this. I do think that's one point.

**May 3, 2023**

35.     During an earnings call on May 3, 2023, Director and Chief Executive Officer Thomas Appio continued Bausch's explanation that the spinoff would result in two strong companies and was in the best interest of Bausch's shareholders.

36.     Appio described the spinoff by saying:

> we remain committed to creating 2 strong companies and, therefore, to ensuring the financial stability of both companies on a stand-alone basis, that's the goal. That's what we are focused on. I cannot -- and I'm not going to comment on specifics. High level, we -- again, we need to create 2 strong companies here. As we move forward, there are still steps to be taken to spin B + L. We've made great progress this year on those. And we remain fully committed, and we believe it's in the best interest of stakeholders to continue on with our strategic alternatives of what we've laid out.

37.     The above statements in Paragraphs 25 to 36 were false and/or materially misleading because: 1) the B+L spinoff would not result in two strong separate companies; 2) without B+L, Bausch was left overly leveraged and without the cashflow generated by B+L; 3) distribution of the B+L spinoff shares would not occur as represented; 4) the above statements omitted and/or concealed the potential damages Bausch faced from the Opt-Out Plaintiffs; and 5) the spinoff was not intended to benefit Bausch shareholders but instead designed to subvert the Opt-Out Plaintiffs' lawsuit against the company.

## LOSS CAUSATION AND ECONOMIC HARM

38.     Throughout the Class Period, Defendants made materially misleading

11

statements and omissions, which artificially inflated and/or maintained an artificially inflated price of Bausch's securities and operated as a fraud or deceit on Class Period purchasers of these securities. These misleading statements and omissions provided investors with false information and concealed material risks. As these risks materialized and the truth began to emerge, the prior artificial inflation came out of Bausch's stock price and Plaintiffs and other members of the Class suffered foreseeable economic losses, which were proximately caused by Defendants materially misleading the investing public.

39.    On May 4, 2021, during a pre-market earnings conference call, Bausch discussed the leverage ratios of both Bausch and B+L, revealing that B+L would be stronger financially than Bausch post-spinoff. Bausch also revealed that its CEO and CFO would be transitioning from Bausch to B+L. On this news, Bausch's stock price declined by $3.48 per share.

40.    Between May 6 and 10, 2022, B+L began trading and Bausch issued a press release announcing its earnings for the first quarter of 2022, revealing weak financial results. According to analysts, Bausch's earnings were indicative of additional delays for the distribution of B+L shares from the spinoff. On this news, Bausch's stock price declined by $6.64 per share.

41.    Between July 28 and 29, 2022, Bausch suffered an additional setback for its business when it received negative news in connection with an ongoing litigation

dispute over its use of the Xifaxan patent, which suggested that Bausch would have a shortened period of exclusive use and, in turn, face additional revenue shortfalls. This development indicated additional delay for the B+L spinoff share distribution. On this news, Bausch's stock price declined by $4.06 per share.

42.    On May 4, 2023, Bausch announced negative earnings results for its first quarter of 2023, which indicated further delay of the B+L share distribution. According to analysts, the probability of a distribution was now less than 50% and, without any mention of it from management, the likelihood of it occurring in the near term was low. On this news, Bausch's stock declined by $1.51 per share.

43.    The market for Bausch's stock was open, well-developed and efficient at all relevant times. Defendants' misrepresentations and omissions created a false impression in the market as to the reasons for the B+L spinoff. In turn, this caused Bausch's shares to be overvalued and artificially inflated during the Class Period.

44.    Reasonably relying on the integrity of the market price for Bausch's securities and market information relating to the B+L spinoff, Plaintiffs and other members of the Class purchased or otherwise acquired Bausch's securities to their detriment as they sustained damages in response to the revelation of corrective information, as discussed below.

45.    Throughout the Class Period, Defendants withheld information that was material to the market's assessment of the B+L spinoff.  Specifically, Defendants

withheld material information concerning the reasons for the spinoff and the risk Bausch faced from the Opt-Out Plaintiffs.

46.     Defendants' misrepresentations and omissions were the foreseeable, proximate cause of Plaintiffs' and Class Members' damages because the risk that caused the loss was within the zone of risk concealed by the misrepresentations and omissions alleged by Plaintiffs. Inherent in Defendants' misrepresentations and omissions was the foreseeable consequence that any revelation of truth or materialization of concealed risks would lead to a precipitous decline in the value of Bausch's shares thereby causing significant economic losses to Plaintiffs and other Class Members.

47.     Defendants' wrongful conduct alleged herein was the direct and proximate cause of the economic losses suffered by Plaintiffs and other members of the Class. During the Class Period, Plaintiffs and other Class Members purchased Bausch's stock at prices that were artificially inflated by Defendants' materially misleading statements and omissions, and when Defendants' misleading statements were corrected and/or the information alleged herein to have been concealed from the market was revealed, the price of Bausch's stock significantly declined, causing Plaintiffs' and Class Members' losses.

## **NO SAFE HARBOR**

48.     The statutory safe harbor provided for forward-looking statements under

certain circumstances does not apply to any of the false statements alleged herein. Many of the statements alleged were not identified as "forward-looking" when made, and, to the extent any statements were forward-looking, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

49.    Alternatively, to the extent that the statutory safe harbor applies to any forward-looking statements alleged, Defendants are liable for such statements because, at the time they were made, the speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Bausch who knew that those statements were false when made.

## **CLASS ACTION ALLEGATIONS**

50.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Bausch securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of Bausch, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

51.   The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Bausch securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Bausch or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

52.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

53.   Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

54.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        a.   whether the federal securities laws were violated by Defendants' acts as alleged herein;

16

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Bausch;

c.      whether the Individual Defendants caused Bausch to issue false and misleading financial statements during the Class Period;

d.      whether Defendants acted knowingly or recklessly in issuing false and misleading statements;

e.      whether the prices of Bausch securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

55.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

56.     Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      Bausch securities are traded in an efficient market;

d.      Bausch's shares were liquid and traded with moderate to heavy volume during the Class Period;

17

e.   Bausch traded on the NYSE and was covered by multiple analysts;

f.   the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of Bausch's securities; and

g.   Plaintiffs and members of the Class purchased, acquired and/or sold Bausch securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

57.   Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

58.   Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

59.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

60.   This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

61.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Bausch securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Bausch securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

62.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Bausch securities.  Such reports, filings, releases and statements were materially false and

misleading in that they failed to disclose material adverse information and misrepresented the truth about Bausch's finances and business prospects.

63.    By virtue of their positions at Bausch, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

64.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Bausch, the Individual Defendants had knowledge of the details of Bausch's internal affairs.

65.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Bausch. As officers and/or directors of a publicly- held company,

the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Bausch's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Bausch securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Bausch's reasons for the B+L spinoff which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Bausch securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

66.    During the Class Period, Bausch securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Bausch securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Bausch securities was substantially lower than the

21

prices paid by Plaintiffs and the other members of the Class.  The market price of Bausch securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

67.   By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

68.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of Bausch's securities during the Class Period, upon the disclosure that it had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

69.   Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70.   The Individual Defendants possessed the power and authority to control the contents of Bausch's SEC filings, press releases, and other market communications. They were provided with copies of Bausch's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.

22

Because of their positions with Bausch, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

71.    As officers, directors, and/or controlling shareholders of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Bausch's operations and to correct promptly any public statements issued by Bausch which had become materially false or misleading.

72.    Because of their positions of control and authority as senior officers, directors, or controlling shareholders, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Bausch disseminated in the marketplace during the Class Period concerning Bausch's operations. During the Class Period, the Individual Defendants exercised their power and authority to cause Bausch to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Bausch within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Bausch securities.

73.    Each of the Individual Defendants, therefore, acted as a controlling person of Bausch.  By reason of their senior management positions, role as directors of Bausch, or controlling shareholders, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Bausch to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Bausch and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

74.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Bausch.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert

fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and

proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: July 26, 2023                    Respectfully submitted,

                                        LEVI & KORSINSKY, LLP

                                        */s/ Adam M. Apton*
                                        Adam M. Apton
                                        55 Broadway, 4th Floor
                                        New York, New York 10006
                                        Tel.: (212) 363-7500
                                        Fax: (212) 363-7171
                                        aapton@zlk.com

                                        *Attorneys for Plaintiff John Kelk*

25